# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHERINE SCOTT, | Case No. EDCV 10-1179-JEM |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF COMMISSIONER OF SOCIAL SECURITY |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## PROCEEDINGS

On August 16, 2010, Katherine Scott ("Plaintiff" or "Claimant" or "Scott") filed a complaint seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI") benefits. The Commissioner filed an Answer on February 10, 2011. On April 18, 2011, the parties filed a Joint Stipulation ("JS").

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before the Magistrate Judge. The matter is now ready for decision. After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision should be affirmed and the case dismissed with prejudice.

# BACKGROUND

Plaintiff is a 50 year old female who filed an application for Supplemental Security Income ("SSI") benefits on December 19, 2006, alleging seizures, inability to read and write, a learning disability, and asthma. Plaintiff has not engaged in substantial gainful activity since September 13, 1998, the alleged onset date of her disability. (AR 10.)

Plaintiff's claim was denied initially on May 17, 2007, and on reconsideration on January 8, 2008. (AR 8.) Plaintiff filed a timely request for hearing, which was held on April 17, 2009, in San Bernardino, California, before Administrative Law Judge ("ALJ") F. Keith Varni. (AR 14.) The Claimant appeared and testified. Vocational expert ("VE") Sandra M. Fioretti also testified. (AR 8.) The Claimant was represented by Counsel. (AR 8.)

On August 20, 2009, the ALJ issued an unfavorable decision. (AR 8-16.) The Appeals Council denied Plaintiff's request for review on July 16, 2010. (AR 1-3.)

# DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues that Plaintiff raises as grounds for reversal are as follows:

1. Whether the ALJ properly developed the record.

2. Whether there is a DOT inconsistency in the ALJ's holding that the Plaintiff can perform the jobs of Kitchen Helper, Hand Packager, and Cook's Helper.

# STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla' . . . but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotations and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

## SEQUENTIAL EVALUATION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantial gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at 746. An impairment is not severe if it does not significantly limit the claimant's ability to work. Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Pt. 404, Subpt. P, Appendix I of the regulations. Parra, 481 F.3d at 746. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen v.

<u>Yuckert</u>, 482 U.S. at 141.  Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work.  <u>Pinto v. Massanari</u>, 249 F.3d 840, 844-45 (9th Cir. 2001).  Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC").[1]  20 C.F.R. § 416.920(e).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p.  If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity.  <u>Moore v. Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000).

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits.  <u>Parra</u>, 481 F.3d at 746.  Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity.  <u>Lounsburry v. Barnhart</u>, 468 F.3d 1111, 1114 (9th Cir. 2006).  To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience.  20 C.F.R. § 416.912(g).  If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits.  <u>Id.</u>

**THE ALJ DECISION**

In this case, the ALJ determined at step one of the sequential process that Plaintiff has not engaged in substantial gainful activity since December 19, 2006, the application date.  (AR 10.)

---

[1] Residual functional capacity ("RFC") is what one "can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

At step two, the ALJ determined that Plaintiff has the following combination of medically determinable severe impairments: asthma, seizures and learning disorder. (AR 10.)

At step three, the ALJ found that Claimant does not have an impairment or combination of impairments that meet or medically equal a listed impairment. (AR 10.)

The ALJ then determined that Scott has the residual functional capacity to perform a full range of work at all exertional levels with the following nonexertional limitations:

> The claimant must avoid heavy concentrations of respiratory contamination and pollution; must avoid work at heights and around dangerous unguarded machinery, or in similar hazardous environments; and she is limited to jobs involving simple, routine, repetitive, and non-public tasks.

(AR 12.) The limitation to no work at heights or around dangerous machinery reflects Plaintiff's seizure history. (AR 14.) The limitation to simple, repetitive tasks reflects her alleged learning disability. (AR 14.)

In determining Plaintiff's RFC, the ALJ also made an adverse credibility finding. (AR 14-15.) Significantly, Plaintiff does not challenge the ALJ's credibility finding.

At step five, with the aid of VE testimony, the ALJ determined that there are jobs that exist in the national economy in significant numbers that Plaintiff can perform. (AR 15-16.) These jobs include kitchen helper, hand packager and cook's helper. (AR 16.)

Consequently, the ALJ concluded that Plaintiff is not disabled within the meaning of the Social Security Act. (AR 16.)

**DISCUSSION**

Plaintiff's first argument is that the ALJ failed to develop the record properly on her allegation that a learning disability renders her unable to read or write. Plaintiff further asserts that her illiteracy is inconsistent with the job requirements set forth in the Dictionary of Occupational Titles ("DICOT") for the three jobs identified by the VE. Plaintiff also

contends that those jobs are inconsistent with the limitations in the RFC regarding no work at heights or around unguarded dangerous machinery.

None of these arguments has merit. The ALJ found that Plaintiff was not illiterate. Substantial evidence supports that finding. Thus, there was no inconsistency with DICOT because of Plaintiff's literacy level. Nor is there any inconsistency based on heights or hazardous machinery because those are not present in the three jobs identified by the VE.

## I. THE ALJ DID NOT FAIL TO DEVELOP THE RECORD PROPERLY

Plaintiff asserts that the ALJ did not properly develop the record by retaining a consulting examiner to test Plaintiff's ability to read and write. In Social Security cases, the ALJ has a special, independent duty to develop the record fully and fairly and to assure that the claimant's interests are considered. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001); Smolen, 80 F.3d 1273, 1288 (9th Cir. 1996); Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). The ALJ has a basic duty to inform himself about facts relevant to his decision. Heckler v. Campbell, 461 U.S. 458, 471 n.1 (1983) (Brennan, Jr., concurring). When the claimant is unrepresented, the ALJ must be "especially diligent" in exploring for all relevant facts. Tonapetyan, 242 F.3d at 1150. The ALJ's duty to develop the record fully is also "heightened" when the claimant may be mentally ill and unable to protect his or her interests. Id. Ambiguous evidence or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence triggers the ALJ's duty to "conduct an appropriate inquiry." Id.

The record in this case is neither ambiguous nor inadequate as to Plaintiff's literacy. Plaintiff completed the ninth grade. (AR 84.) She gave conflicting evidence on whether she attended special education classes. (AR 84, 160, 195.) Plaintiff did allege a learning disorder that impairs her ability to read and write. (AR 26-27, 80, 110, 112, 193, 198.) In her disability report, however, she stated she could read and understand English and write more than her name in English. (AR 79.) Other evidence indicates some capacity to read

and write. (AR 102, 112, 193, 198.) Her daughter says her reading skills are "below average." (AR 102.)

The Commissioner bears the burden at step five of the sequential process to prove that Scott can perform other work in the national economy, given her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g), Silveira v. Apfel, 204 F.3d 1257, 1261 n.14 (9th Cir. 2000). Literacy or education level is a vocational factor relevant only to the step five inquiry and not to the existence of a disability. Elizondo v. Astrue, 2010 WL 3432261, at *6 (E.D. Cal. Aug. 31, 2010); but see Pinto, 249 F.3d at 846 n.5 (declining to decide the issue). Thus, the Commissioner bears the burden of establishing that Scott is literate. Silveira, 204 F.3d at 1261.

Plaintiff relies heavily on Silveira but her reliance is misplaced. In Silveira, the ALJ made no express finding that Silveira was literate in English and there was insufficient evidence in the record to determine whether or not Silveira (who was a native Spanish speaker) was literate in English. Id. Neither of those factors is applicable here.

The ALJ made an express finding of literacy. (AR 15.) He determined that Claimant has "a limited education and is able to communicate in English." (AR 15.) He incorporated this limitation in his hypothetical question to the VE. (AR 32.)

Social Security regulations divide education levels in four categories. First is illiteracy, which is defined as the "inability to read or write." 20 C.F.R. § 416.964(b)(1). The regulation goes on to say:

> We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.

A marginal education, by contrast, means 6th grade level or less. § 416.946(b)(2). A limited education means 7th through 11th grade. §416.946(b)(3). A high school education means a twelfth grade education or more. § 416.946(b)(4). By finding that Scott has a limited

education, the ALJ necessarily rejected Plaintiff's illiteracy allegations and found that she had ability in reasoning, arithmetic and language skills but not enough to do semi-skilled and skilled job duties. § 416.946(b)(3).

Substantial evidence supports the ALJ's finding. As already observed, Plaintiff indicated on a disability report that she could read and write. (AR 79.) Consulting psychiatric examiner Linda Smith, M.D., found Plaintiff to be of "at least average intelligence," and could do a simple math problem and spell "Kathy" backwards and forwards. (AR 197.) There was other evidence of her ability to read. (AR 102, 112, 193, 198.)

The ALJ also made a finding that Plaintiff's learning disability is "not so severe that it would preclude her from performing basic work-related mental functions in a work setting." (AR 14.) The ALJ found, based on the medical evidence, that Plaintiff's learning disability was not severe enough to meet a listed impairment. (AR 10-12.) In his RFC, the ALJ found that Plaintiff's learning disorder had little impact on her literacy:

> The claimant has also alleged that she is unable to read or write because of a learning impairment. While the psychiatric consultative examiner diagnosed the claimant with a learning disorder, NOS (Ex. 7F/5), it appears that the consultative examiner gave the claimant the benefit of the doubt since she did not see a lot of evidence of a learning disorder (Ex. 7F/6). In fact, the consultative examiner found that the claimant appeared to be of at least average intelligence, she could do a simple math problem, she could spell "Kathy" forward and backward, and her decreased reading and spelling skills were due to a suboptimal education (Ex. 9F/1, 5). Thus, based on the clinical findings of the consultative examiner, it is extremely questionable whether the claimant has a severe mental impairment from a diagnosis of a learning disorder.

(AR 13.) The ALJ also noted other medical evidence indicates Plaintiff does not have severe mental impairments. (AR 14.) Dr. Smith stated that Claimant "may indeed have a learning disorder but I did not see a lot of evidence today." (AR 198.) Dr. Smith opined that Scott is not impaired in her ability to work or in her ability to understand, remember or complete both simple and complex commands. (AR 198.) Nonetheless, the ALJ incorporated a limitation in Plaintiff's RFC to simple, routine, repetitive and non-public tasks. (AR 12.)

Additionally, the ALJ made an adverse credibility finding (AR 15) which Plaintiff does not challenge here.

The record here is neither ambiguous nor inadequate as to Plaintiff's literacy. The ALJ properly found that Plaintiff has a limited education, i.e., she is not illiterate. Substantial evidence supports that finding. The ALJ met the Commissioner's burden to establish Plaintiff's literacy.

## II. THE ALJ'S STEP FIVE DETERMINATION IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND FREE OF LEGAL ERROR

Plaintiff challenges the ALJ's step five determination that there are other jobs in the national economy that Plaintiff can perform as inconsistent with DICOT. Specifically, Plaintiff alleges that her illiteracy is inconsistent with DICOT job descriptions for the jobs of kitchen helper, hand packager, and cook's helper identified by the VE.

DICOT raises a presumption as to job classification requirements. Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). An ALJ may accept vocational expert testimony that varies from DICOT, but the record must contain "persuasive evidence to support the deviation." Id. The ALJ has an affirmative responsibility to ask whether a conflict exists between a VE's testimony and DICOT. SSR 00-4p, 2000 WL 1898704, *4 (S.S.A.); Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007). If there is a conflict, the ALJ must obtain a reasonable explanation for the conflict and then must decide whether to rely on the VE or DICOT. Id. Failure to do so, however, can be harmless error where there

is no actual conflict or the VE provides sufficient support to justify a variation from DICOT. Id. at 1154 n.19.

Here, Plaintiff bases her argument of a variance from DICOT on the same allegation of illiteracy the Court already has rejected. The ALJ's finding that Plaintiff had a limited education was incorporated in the hypothetical to the VE. (AR 32.) The ALJ did not err in omitting from the hypothetical an illiteracy limitation. Rollins v. Massanari, 261 F.3d 853, 863 (9th Cir. 2001) (no error in omitting limitations Plaintiff claims but does not prove).

There was no inconsistency between the VE's testimony and DICOT. Each of the three jobs identified by the VE has a language level of 1 and a reasoning level of 2. See DICOT 318.687-010 (kitchen helper); 920.587-018 (hand packager) and 317.687-010 (cook helper). A limited education means "ability in reasoning, arithmetic and language skills," 20 C.F.R. § 416.964(b)(3), which is consistent with language level 1 jobs. The ALJ's limitation to simple, repetitive tasks (AR 12) is also consistent with Reasoning Level 2 jobs. Chavez v. Astrue, 2009 WL 5172857, at *7 n.10 (C.D. Cal. Dec. 21, 2009); Squier v. Astrue, 2008 WL 2537129, at *5 (C.D. Cal. June 24, 2009).

Plaintiff also alleges that the three jobs identified by the VE are inconsistent with the ALJ's limitation to no work around heights or dangerous machinery. In each instance, however, the DICOT job specifications indicate that moving mechanical parts and high exposed places are not present. Again, Plaintiff has not demonstrated any inconsistency between the VE's testimony and DICOT.

**ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner of Social Security is affirmed and that this action is dismissed with prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: April 27, 2011              */s/ John E. McDermott*
                                    JOHN E. MCDERMOTT
                                    UNITED STATES MAGISTRATE JUDGE